## CARNAHAN *v.* PELL.

1. Although the Constitution requires that " all process shall run in the name of the people of the State of Colorado," yet the insertion of the word " Territory " instead of State in a writ of execution, *held* to be a clerical misprision and amendable.

2. Under the statute (R. S. 1868, p. 524, § 13), a constable has the same authority as a sheriff to execute a writ of *fi. fa.,* issued out of a probate court.

3. If an instrument, whether it calls for money or property, be not payable *unconditionally and at all events,* it is not negotiable under the statute. (R. S., chap. 10.)

*Error to County Court of Boulder County.*

THE facts are stated in the opinion.

Mr. BEN. LANE POSEY and Mr. JOHN M. MAXWELL, for plaintiff in error.

Mr. ORRIS BLAKE & Mr. R. H. WHITELY, for defendant in error.

THATCHER, C. J. This was an action in replevin, with a count in trover added, as authorized by statute. The suit was brought by Pell against Carnahan, to recover a certain quantity of wheat or its value.

The plaintiff first offered and read in evidence a record of the probate court of Boulder county setting out a judgment of said court, entered on the 23d day of February, A. D. 1876, in a cause in assumpsit in which William G. Pell was plaintiff and John C. Morehead and Samuel Hayden were defendants. Judgment was given for the plaintiff in the sum of $472.50. An alias execution having been issued upon said judgment, was then offered in evidence, which was in the following form :

"STATE OF COLORADO, ⎰
  BOULDER COUNTY, ⎰ *ss.:*

The People of the Territory of Colorado to the Sheriff or any Constable of Boulder county,—Greeting :

We command you, as we have heretofore commanded you, that of the lands and tenements, goods and chattels and chattels real of John C. Morehead and Samuel Hayden, defendants in your county, you cause to be made the sum of four hundred and seventy-two dollars and fifty cents, which William G. Pell, plaintiff, lately in the probate court of said Boulder county, at a term thereof begun and holden at Boulder, in said county, on the 14th day of February, A. D. 1876, recovered a judgment against the said defendants, and which, by the said court, was adjudged to the said plaintiff for his damages in this behalf sustained.

Witness, Edward J. Morath, Clerk of the County Court, and the seal thereof, at Boulder in said county, this 12th day of August, A. D. 1876.

[L. S.]                    EDWARD J. MORATH, *Clerk.*"

By the return on said writ it appears that Samuel B. Austin, as constable, did in virtue thereof on the 24th day of August, at the White Rock flouring mill, in Boulder county, levy upon ten thousand pounds of wheat as the property of the defendant Morehead, and on the 8th day of September, upon sixteen thousand and eighteen pounds of wheat as the property of the defendant Hayden ; that pursuant to notice, on the 5th day of October, at public auction, he sold all of said wheat to William G. Pell.

The defendant below objected to the admission in evidence of the execution and the return thereon, chiefly on three grounds. First, because the execution runs in the name of the People of the Territory and not of the State of Colorado ; and, second, because the levy and sale in pursuance of the writ were made by a constable and not by a sheriff ; third, that no valid judgment had been shown or proven upon which to found the execution.

The judgment upon which the execution had been issued was a judgment of a court of record, of competent jurisdiction, and pronounced in due form of law. It is insisted that the execution is absolutely void for the reason that it does not run in the name of the People of the State of Colorado. On the 1st day of August, A. D. 1876, the president of the United States issued his proclamation declaring " the admission of Colorado as a State into the Union complete." Section 30, article 6th, of our Constitution directs that "All processes shall run in the name of the People of the State of Colorado." Eleven days intervened between the president's proclamation and the issuance of the execution. Is the writ void ? We think not. By the schedule to the same Constitution, it is provided that all laws in force at the adoption of the Constitution should remain of the same force as if the Constitution had not been adopted, until they should expire by their own limitation, or should be altered or repealed by the general assembly. Under the statute of Amendments and Jeofails (R. S. 1868, p. 46), which was in force when this case was tried, and remained

in force until repealed by the Code (Code, p. 161), the *clerical misprision* — as the insertion of the word *Territory* instead of *State*, clearly was — would not invalidate the writ. In this respect the writ was amendable.

Even if we were to leave out of view the statute concerning amendments and jeofails, we are inclined to the opinion that the mere omission of the style of the writ would not make it a nullity. Says Freeman on Executions, § 39: "Although it has been the custom in England to issue the writ in the name of the reigning sovereign, and in the greater portion of the United States in the name of the State or the People of the State, we have met with no decision determining the effect of an omission or variance in this respect. We are inclined to regard these words as a formal rather than as a substantial part of the writ. The parts which follow sufficiently show the authority under which the writ is issued."

The writ was regularly directed to the sheriff or any constable of Boulder county. Under the law a constable had the same authority as the sheriff to execute a writ of *fi. fa.* issued out of a probate court. R. S. 1868, p. 524, § 13.

By reference to the constable's return to the alias execution, it appears that the levy upon the wheat—26,018 pounds —was complete on the 8th day of September. On the 14th day of the same month Carnahan executed and delivered to the constable the following receipt:

"Received of S. B. Austin, a constable of Boulder county, 26,018 pounds of wheat, which I agree to hold and keep for said Austin, unless taken from me by law. This wheat, said wheat being in litigation.

J. M. CARNAHAN.

WHITE ROCK MILLS, *Sept.* 14, 1876."

This receipt bore the following indorsement:

"For value received, I transfer and assign the within receipt, and all the wheat therein mentioned, to William G. Pell.                                    S. B. AUSTIN."

Carnahan, by the delivery of this receipt, became in law the receiptor of the property. A receiptor occupies the position of bailee. To the officer, he is required to respond. Over the receipt and the stipulation it contains, the creditor has no control. The agreement incorporated into the receipt is for the private security of the constable. *Barron v. Cobleigh*, 11 N. H. 564; *Phillips v. Bridge*, 11 Mass. 247; *Learned, adm'r, v. Bryant et al.*, 13 id. 225.

The receiptor is but the servant of the constable.

What was the effect of the assignment of the receipt to Pell? The plaintiff below insists that Austin's indorsement passed the legal title to the instrument itself and the wheat therein mentioned to Pell, and gave him the right to demand and recover the same, or its value, of Carnahan; that by the assignment Pell succeeded to all the rights of the constable.

In our view the receipt was neither at common law, by the law merchant, nor is it under our statute negotiable. By section three, of chapter X, R. S. 1868, it is enacted : "All promissory notes, bonds, due bills and other instruments in writing, made by any person, whereby such person promises or agrees to pay any sum of money or article of personal property, or any sum of money in personal property, or acknowledges any sum of money or article of personal property to be due to any other person or persons, shall be taken to be due and payable to the person or persons to whom the said note, bond, bill or other instrument in writing is made."

Section four provides that all such instruments shall be assignable by indorsement in the same manner as bills of exchange, so as absolutely to transfer and vest the property thereof in the assignee.

Section five authorizes the assignee to sue in his own name.

It will be observed that in order to negotiability, the money or property must be payable absolutely. *Kelly v. Hemmenway*, 13 Ill. 604; *Eldred v. Malloy*, 2 Col. 320.

Before this statute this was true of a promissory note. Daniels on Negotiable Instruments, § 41.

If an instrument, whether it calls for money or property, be not payable *unconditionally and at all events*, it is not negotiable under the statute. The property described in the instrument in question is only to be held and kept, provided it be not taken from Carnahan by law. There is no unconditional agreement or promise to deliver the property to Austin. There is an express declaration that it is in litigation. It contains no direct admission as to ownership of the property. It is not, in our opinion, such an instrument as section three contemplates, and is therefore not negotiable.

Although the instrument differs in some respects from the ordinary form of a receiptor's receipt, in that it omits the usual acknowledgment that the property was under levy, it was evidently intended to perform that office. It is more akin to that than to any other instrument. Carnahan became the keeper of the property for the constable. Austin as constable asserted his right to it before delivery to Carnahan, in virtue of a levy, as the evidence discloses. Accepting his return to the execution as true, he had, as an officer, special property in the wheat. Carnahan, by reason of any transaction between him and the constable, in his capacity as receiptor, had no property, either general or special, in the wheat. If Carnahan, at the date of the indorsement of the receipt to Pell, had delivered the wheat to him, it would have operated *at most* as a substitution of receiptors (and we do not decide that it would have that effect), and even for the conversion of property a receiptor has no action. The custody of the receiptor is but the custody of the law. "If the property is destroyed or converted, whether by the receiptor, or by the defendant, or by a stranger to the writ, the officer, by virtue of his special property, may maintain an action of trespass or trover, or for the possession of the property, in case its possession can be obtained. The receiptor, on the other hand, has no

property, general or special, in the goods in his custody. Having no right of property, it must follow that he can never, in his capacity as receiptor, have any right of action for converting, injuring or destroying property." Freeman on Executions, § 265.

We are satisfied that so far as Pell bases his right to recover upon the receipt, it was not well founded. If the receipt is relied on, Austin, as its legal owner, was the proper person to bring the suit against Carnahan. For us to discuss the defenses available to Carnahan in such a suit, would in this cause be fruitless.

Pell also bases his right to recover upon his alleged title acquired at the execution sale, as is shown by the officer's return. As the cause must be sent back for a new trial, we deem it unnecessary to comment upon the rather unsatisfactory testimony touching the validity of the levy and sale of the wheat.

Judgment reversed with costs and cause remanded.

*Reversed.*